Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

Brian K. Kelsey (*Pro Hac Vice To Be Filed*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice To Be Filed*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Thomas Sweet,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>California Association of Psychiatric Technicians, et al.,<br><br>　　　　　Defendants. | Case No. 2:19-CV-00349-JAM-AC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:<br>Time:<br>Judge: |

# INTRODUCTION

Government employees have a First Amendment right not to join or pay any fees to a union "unless the employee affirmatively consents" to do so. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Plaintiff, Alfred Sweet, employed at Atascadero State Hospital by the California Department of State Hospitals ("DSH") has repeatedly advised the California Association of Psychiatric Technicians ("CAPT") that it does not have his affirmative consent to withdraw its dues from his paycheck or to represent him as a member of the union. These requests have been ignored or denied. CAPT has insisted, instead, that Mr. Sweet must wait until an opt-out period that it prefers for him to exercise his First Amendment right not to pay union dues.

Forcing Mr. Sweet to continue to pay union dues until an opt-out period is unconstitutional. If Mr. Sweet did sign a card joining the union, it is not valid. The burden is on CAPT to prove by "clear and compelling" evidence that Mr. Sweet provided affirmative consent to pay union dues, and it cannot meet this burden because of the unconstitutional nature of the choice it gave him. *Id.* Mr. Sweet was given the unconstitutional choice between paying union dues as a member of the union or paying union agency fees as a non-member of the union. The Supreme Court in *Janus* recognized that Mr. Sweet should have been given the choice to pay nothing at all to the union as a non-member of the union. Because he was not given this choice, his union authorization card is no longer valid.

Also, it is a violation of the First Amendment to force citizens to associate with organizations or causes with which they do not wish to associate. Yet California law grants public sector unions the power to speak on behalf of employees as their exclusive representative. Pursuant to this law, CAPT purports to act as the exclusive representative of Mr. Sweet. This compelled arrangement abridges his rights of speech and association.

Given that the Supreme Court has recently spoken directly on both these issues, Mr. Sweet is more than likely to succeed on the merits of his case. Mr. Sweet is currently suffering irreparable harm by having union dues deducted from his paycheck against his

will to go towards union advocacy he does not support. He is also suffering irreparable harm by having the union misrepresent his views in its negotiations with DSH.

Mr. Sweet respectfully requests that the Court enter a preliminary injunction preventing further injury as the case is litigated. The Court should enter a preliminary injunction 1) ordering both Acting Director of DSH, Stephanie Clendenin ("Director Clendenin"), and CAPT to halt the deduction of union dues from Mr. Sweet's paycheck; 2) enjoining California Attorney General Xavier Becerra ("General Becerra") from enforcing Cal. Gov't Code §§ 3515 and 3515.7 and any other provisions of California law that require Mr. Sweet to pay what amount to agency fees to CAPT because he requested to become an agency fee payer; 3) enjoining General Becerra from enforcing Cal. Gov't Code §§ 1157.12, 3513(i), 3515, and 3515.5 and all other provisions of California law that require Mr. Sweet to wait until a specified window of time to stop the deduction of union dues from his paycheck; 4) enjoining CAPT from acting as Mr. Sweet's exclusive representative in bargaining negotiations with his employer, the California Department of State Hospitals; and 5) enjoining General Becerra from enforcing Cal. Gov't Code §§ 3515.5 and 3520.5 and all other provisions of California law that provide for exclusive representation of employees who do not affirmatively consent to union membership. The failure to enjoin these activities will lead to further abridgments of First Amendment rights which cannot be remedied at the conclusion of the litigation.

**FACTS**

Mr. Sweet has been a psychiatric technician employed by Atascadero State Hospital, part of DSH, since January 2011. Defendant Stephanie Clendenin is sued in her official capacity as Acting Director of DSH.

When Mr. Sweet began his employment with DSH in January 2011, he joined CAPT. Later, Mr. Sweet served as chairman of the American Association of Psychiatric Technicians, and in this capacity, he developed a poor opinion of the representation CAPT provided its members. He also grew concerned regarding CAPT's management practices

and the lack of transparency in CAPT's bookkeeping. He voiced his complaints of those practices repeatedly. On July 13, 2014, Mr. Sweet requested to leave the union. On other occasions, Mr. Sweet also requested to leave the union and to become an agency fee payer, but his requests were denied.

After the Supreme Court issued its decision in *Janus*, Mr. Sweet learned that he had the right both not to be a member of the union and not to pay any money to the union. Mr. Sweet submitted a resignation letter to CAPT, explaining that the union agreement he had signed in January 2011 was invalid after the Supreme Court's decision in *Janus*. Mr. Sweet requested, once again, to resign from the union and stop having its dues deducted from his paycheck. He stated that he may have to resort to legal action to uphold his constitutional rights. Mr. Sweet also sent a copy of the letter to the payroll department at his employer, but he was advised that all communications should be made to CAPT.

CAPT responded with a letter stating that Mr. Sweet was not permitted to resign his union membership except during a window thirty days prior to the expiration of the collective bargaining agreement. The current collective bargaining agreement went into effect on July 1, 2016, and expires on July 1, 2019. Employees are, therefore, locked into union membership for three years at a time. The letter from CAPT stated that Mr. Sweet's next tri-annual window to resign his membership would be June 1 to July 1, 2019.

Since Mr. Sweet began employment in January 2011, Director Clendenin and her predecessors have deducted union dues from Mr. Sweet's paychecks and have remitted those dues to CAPT. Those union dues now approximate fifty-nine dollars ($59) per month. Despite Mr. Sweet's repeated requests that the deductions be stopped, Director Clendenin continues to deduct union dues from Mr. Sweet's paycheck.

## ARGUMENT

**The Court should enjoin Defendants from collecting union dues and acting as Mr. Sweet's exclusive representative in bargaining negotiations with his employer.**

In the Ninth Circuit, Plaintiffs seeking a preliminary injunction must satisfy one of two tests. The first test considers 1) the likelihood Plaintiffs will succeed on the merits, 2) whether Plaintiffs will suffer irreparable injury if the injunction is not granted, 3) the balance of equities, and 4) whether the injunction would be in the public interest. *Coffman v. Queen of the Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). The second test provides that "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Alliance for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under either mode of analysis, the Court should grant Mr. Sweet a preliminary injunction on his claims.

### I. Mr. Sweet is likely to succeed on the merits.

#### A. Mr. Sweet is likely to succeed in his claim that continued deduction of union dues violates his First Amendment rights to free speech and freedom of association.

The Court in *Janus* explained that payments to a union could be deducted from a non-member's wages only if that employee "affirmatively consents" to pay.

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted).

Supreme Court precedent provides that certain standards be met in order for a person to properly waive their constitutional rights. First, waiver of a constitutional right

must be of a "known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Second, the waiver must be freely given; it must be voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86 (1972). Finally, the Court has long held that it will "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

In Mr. Sweet's case, he could not have waived his First Amendment right to not join or pay a union. First, at the time Mr. Sweet signed the union card, the right not to pay a union was not known, since the Supreme Court had not yet issued its decision in *Janus*. Further, Mr. Sweet could not have voluntarily, knowingly, or intelligently waived his right not to join or pay a union because neither CAPT nor DSH informed him he had a right not to join the union at all. Further, at the time he signed the union card, Mr. Sweet had no choice but to pay the union, so he could not have voluntarily waived his First Amendment right.

Because the Court will "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co.*, 301 U.S. at 307, the waiver of constitutional rights requires "clear and compelling evidence" that the employees wish to waive their First Amendment right not to pay union dues or fees. *Janus*, 138 S. Ct. 2484. In addition, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (*citing Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)).

The union card Mr. Sweet signed did not provide a clear and compelling waiver of Mr. Sweet's First Amendment right to not join or pay a union because it did not expressly state that Mr. Sweet has a constitutional right not to pay a union and because it did not expressly state that Mr. Sweet was waiving that right.

After the decision in *Janus*, CAPT maintains that Mr. Sweet may only withdraw his union membership during an arbitrary 30-day time window once every three years, despite his repeatedly requests to be removed from the union rolls and to stop the dues deduction from his paycheck.

The invalid union dues authorization card signed by Mr. Sweet before the Supreme Court's decision in *Janus* cannot meet the standards set forth for waiving a constitutional right, as required by the Supreme Court in *Janus*; therefore, CAPT cannot hold Mr. Sweet to the time window to withdraw his union membership set forth in the union card.

Since he was apprised of his constitutional rights by the *Janus* decision, Mr. Sweet has not signed an additional union authorization card. Therefore, Mr. Sweet has never been given his constitutional right to pay nothing to the union, and he has, therefore, never given CAPT the "affirmative consent" required by the *Janus* decision.

The likelihood that Mr. Sweet succeeds in his claim is, thus, considerable. Mr. Sweet has a clearly established right not to support the union, and he has not waived that right. This Court should prohibit CAPT and DSH from treating Mr. Sweet as if he has waived his First Amendment rights. At the very least, Mr. Sweet has certainly "raised a serious question going to the merits" of whether continuing to allow CAPT to take money from his paycheck to fund their advocacy violates his rights under the First Amendment. *Alliance for the Wild Rockies*, 865 F.3d at 1217.

Alternatively, if Mr. Sweet's dues are not considered union membership dues but, instead, agency fees that are being deducted from his paycheck because he requested to become an agency fee payer, then those deductions should, likewise, be stopped: "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Janus*, 138 S. Ct. at 2486. Therefore, the Court should order those agency fees to stop being deducted from Mr. Sweet's paycheck and should enjoin General Becerra from enforcing Cal. Gov't Code §§ 3515 and 3515.7 and any other provisions of California law that allow for the payment of agency fees. Mr. Sweet is likely to succeed in this alternative claim because the *Janus* case directly bars such practice.

### B. Mr. Sweet is likely to succeed in his claim that compelled representation violates his First Amendment rights.

As the Supreme Court has recently recognized:

> Designating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer.

*Janus*, 138 S. Ct. at 2460. The First Amendment should not countenance such a substantial restriction. "[M]andatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox*, 567 U.S. at 310 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)) (internal quotation marks omitted). Because forced union representation does not further a compelling state interest, Mr. Sweet is likely to succeed in his claim that compelled representation by the union violates his constitutional rights.

Unions and state governments have proffered various claimed interests for compelling the association of employees. One interest often proffered is "labor peace," meaning the "avoidance of the conflict and disruption that it envisioned would occur if the employees in a unit were represented by more than one union" because "inter-union rivalries would foster dissension within the work force, and the employer could face 'conflicting demands from different unions.'" *Janus*, 138 S. Ct. at 2465. Other interests typically asserted in support of exclusive representation status amount to much the same claim: that it is in the state's interest to have a "comprehensive system" that bundles all employees into a single bargaining representative with which the state can negotiate. *See, e.g.,* Brief for Respondents Lisa Madigan and Michael Hoffman at 4, *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018) (No. 16-1466).

In *Janus* the Supreme Court assumed, without deciding, that labor peace might be a compelling state interest but rejected it as a justification for agency fees. The interest should, likewise, be rejected as a justification for exclusive representation. The Supreme

Case No. 2:19-CV-00349-JAM-AC          8
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Court recognized that "it is now clear" that the fear of "pandemonium" if the union couldn't charge agency fees was "unfounded." *Janus*, 138 S. Ct. at 2465. To the extent individual bargaining is claimed to raise the same concerns of pandemonium, this too, remains insufficient. The Supreme Court rejected the invocation of this rationale due to the absence of evidence of actual harm. *Id.* It may be that the State finds it convenient to negotiate with a single agent, but that, in and of itself, is not enough to overcome First Amendment rights. The rights to speech and association cannot be limited by appeal to administrative convenience. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972) (in free speech cases, a "small administrative convenience" is not a compelling interest); *see also Tashjian v. Republican Party*, 479 U.S. 208, 218 (1986) (holding that a state could "no more restrain the Republican Party's freedom of association for reasons of its own administrative convenience than it could on the same ground limit the ballot access of a new major party"). While it may be quicker or more efficient for the state to negotiate only with the union, "the Constitution recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656 (1972). Even if the state could claim that it saves monetary resources by negotiating only with the union, the preservation of government resources is not an interest that can justify First Amendment violations. In other contexts where the state's burden receives only rational basis review, the Supreme Court has rejected such justifications. *See, e.g., Romer v. Evans,* 517 U.S. 620, 635 (1996) (rejecting the "interest in conserving public resources" in a case applying only heightened rational basis review); *see also Plyler v. Doe*, 457 U.S. 202, 227 (1982) ("a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources").   Such claimed interests are not enough to leave Mr. Sweet "shanghaied for an unwanted voyage." *Janus*, 138 S. Ct. at 2466.

Under Cal. Gov't Code §§ 3515.5 and 3520.5, Mr. Sweet must allow CAPT to speak on his behalf as a condition of his employment on matters that *Janus* recognizes to be of inherently public concern. 138 S. Ct. at 2473. California law grants CAPT prerogatives to speak on Mr. Sweet's behalf on all manner of contentious matters. For

example, the union is entitled to speak on Mr. Sweet's behalf regarding the grievance procedure Mr. Sweet would have to go through to settle disputes with his employer. The union may even take a position directly contrary to Mr. Sweet's best interest in negotiating his salary or other terms of his employment because it is barred by law from considering his individual merit. Cal. Gov't Code § 3516. These are precisely the sort of policy decisions that *Janus* recognized are necessarily matters of public concern. 138 S. Ct. 2467.

The Supreme Court's compelled association and speech cases provide good examples of how the current arrangement injures Mr. Sweet. Allowing an individual the ability to publicly speak in disagreement with a group is not an excuse for continuing to compel association with the group. In New Hampshire, for example, motorists could not be compelled to associate with the state motto by bearing it on their license plates even though they were given the outlet to publicly speak against it. *Wooley v. Maynard*, 430 U.S. 705 (1977). The Boy Scouts could not be compelled to associate with members who engaged in activism with which the Boy Scouts disagreed even when they were given the outlet to express such disagreement publicly. *Boy Scouts of America et al. v. Dale*, 530 U.S. 640 (2000). Florida newspapers could not be compelled to print editorials from the state even when they were given the freedom to print their disagreement with such editorials. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256–57 (1974). Each of these instances of compelled association or speech was held unconstitutional. So too, here Mr. Sweet's ability to express a message different from that of CAPT does not make it constitutional for California to forcibly associate Mr. Sweet with CAPT and its views.

Unions in similar cases have attempted to rely on *Minnesota State Board v. Knight*, 465 U.S. 271 (1984) for the proposition that states can require exclusive representation and choose to bargain with only one union. The *Knight* case holds that other employees do not have a right, as members of the public, to a formal audience with the government to air their views. *Id*. *Knight* does not decide, however, whether such employees can be forced to associate with the union; therefore, the case is inapposite. As the *Knight* court

framed the issue, "The question presented . . . is whether this restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees." *Id*. at 273. Based on this question, the aggrieved employees' "principal claim [was] that they have a right to force officers of the state acting in an official policymaking capacity to listen to them in a particular formal setting." *Id*. at 282. The Supreme Court disagreed, holding "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Id*. at 283. As the court's own words reveal, the Supreme Court did not address the question of whether the aggrieved employees must be compelled to associate with the union that has been granted exclusive representation status for bargaining purposes. In short, *Knight* is not a freedom of association case but a free speech case.

      Legally compelling Mr. Sweet to associate with CAPT demeans his First Amendment rights. Indeed, "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . a law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 633 (1943) (internal quotation marks omitted)). California's laws command Mr. Sweet's involuntary affirmation of objected-to beliefs; therefore, the laws should be enjoined.

      None of the state interests offered in favor of depriving Mr. Sweet his right to free association rise to the level of being immediate, urgent, or compelling. The traditionally proffered compelling state interests for exclusive representation do not apply to Mr. Sweet. He has, therefore, demonstrated a substantial likelihood that he will succeed on the merits of his claim. At a minimum, he has "raised a serious question going to the merits" of whether compelling him to associate with CAPT violates his First Amendment rights. *Alliance for the Wild Rockies*, 865 F.3d at 1217.

## II. Mr. Sweet will suffer irreparable injury.

### A. Irreparable injury will result if the union is allowed to continue deducting dues from Mr. Sweet's paychecks.

The continued deduction of union dues constitutes an irreparable injury to Mr. Sweet. Deducting over seven hundred dollars a year from his paycheck is not insignificant. The deduction is a hardship on Mr. Sweet that cannot be compensated merely by returning his money with interest. The immediate injury being suffered by Mr. Sweet's current lack of funds is irreparable at a later date.

The withholding from Mr. Sweet's paycheck also constitutes irreparable injury because it is a compelled subsidy that CAPT will use to fund ideological activities which Mr. Sweet objects to. Such deductions are not simply a matter of money which could be returned with interest at the conclusion of litigation. Refunding his money at the close of the case would merely render a compelled subsidy, instead, to be a compelled loan. It would not resolve Mr. Sweet's injury:

> [E]ven a full refund would not undo the violation of First Amendment rights. . . . [T]he First Amendment does not permit a union to extract a loan from unwilling nonmembers even if the money is later paid back in full.

*Knox*, 567 U.S. at 317.

Long before *Janus* recognized that agency fees were too great an imposition to pass constitutional muster, the Supreme Court put safeguards in place to "avoid the risk that [objecting employees'] funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining." *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 305 (1986). In the public sector context, even bargaining itself inherently implicates political and ideological concerns. See *Janus*, 138 S. Ct. at 2473. "Given the existence of acceptable alternatives, [a] union cannot be allowed to commit dissenters' funds to improper uses even temporarily." *Ellis v. Bhd. of Ry. Employees*, 466 U.S. 435, 444 (1984). The temporary deprivation to which the union claims an entitlement should not be countenanced. "First Amendment values are at serious risk if the

government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that [the government] favors." *United States v. United Foods*, 533 U.S. 405, 429 (2001). The only way to avoid that risk in this case is to enjoin the collection of Mr. Sweet's dues immediately.

### B. Irreparable injury will result if the union continues to act as Plaintiff's exclusive representative.

Even without access to Mr. Sweet's money, CAPT would continue to impinge his First Amendment rights by acting as his exclusive representative. As the Supreme Court observed,

> that status gives the union a privileged place in negotiations over wages, benefits, and working conditions. Not only is the union given the exclusive right to speak for all the employees in collective bargaining, but the employer is required by state law to listen to and to bargain in good faith with only that union. Designation as exclusive representative thus 'results in a tremendous increase in the power' of the union.

*Janus*, 138 S. Ct. at 2467 (quoting *American Communications Ass'n. v. Douds*, 339 U.S. 382, 401 (1950)) (internal citations omitted). Continuing to force Mr. Sweet to associate with CAPT in this way irreparably denies him the independent voice guaranteed him by the First Amendment.

California law expressly grants the union the right to speak on Mr. Sweet's behalf on matters of serious public concern, including the wages, hours, and other conditions of employment of public employees like Mr. Sweet. Cal. Gov't Code § 3516. This speech that Mr. Sweet is forced to associate with is not only personal, it is political: "[i]n the public sector, core issues such as wages, pensions, and benefits are important political issues." *Harris v. Quinn*, 134 S. Ct. 2618, 2632 (2014). Forcing Mr. Sweet to associate with political speech with which he disagrees is a violation of his First Amendment freedoms.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The only solution which gives proper weight to Mr. Sweet's rights under the constitution is to enjoin General Becerra from enforcing Cal. Gov't Code §§ 3515.5 and 3520.5 because they compel Mr. Sweet to associate with CAPT as his exclusive representative. Such representation should be stopped immediately and for the duration of the case.

### III. The balance of equities in this case favors granting Mr. Sweet an injunction.

#### A. Enjoining the collections of Mr. Sweet's dues will not harm defendants.

"[U]nions have no constitutional entitlement to the fees of nonmember-employees." *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007). Nor do they have the right to claim membership of employees who have not provided affirmative consent to membership. *Janus,* 138 S. Ct. at 2486. Given that the entire risk of constitutional deprivation falls on employees rather than the union, courts must ask "[w]hich side should bear this risk? The answer is obvious: the side whose constitutional rights are not at stake." *Knox*, 567 U.S. at 321.

As the Supreme Court recognized when considering the pre-*Janus* agency fee regime, "if unconsenting nonmembers pay less than their proportionate share, no constitutional right of the union is violated because the union has no constitutional right to receive any payment from these employees . . . The union has simply lost for a few months the 'extraordinary' benefit of being empowered to compel nonmembers to pay for services that they may not want and in any event have not agreed to fund." *Knox,* 567 U.S. at 321 (internal citations omitted). The same logic applies here: at most, CAPT can try to claim a contractual right to some dues from Mr. Sweet. Weighed against Mr. Sweet's interest in the vindication of his First Amendment rights, CAPT's desire for his dues is insubstantial.

The balance of equities, therefore, favors Mr. Sweet. Given his significant likelihood of success on the merits, the court should, therefore, issue a preliminary injunction. And in this case the balance of equities so strongly favors Mr. Sweet that,

under this Circuit's alternative test, the Court should enjoin dues collection even if it believes Mr. Sweet has only raised a substantial question going to the merits of his claim. *Alliance for the Wild Rockies*, 865 F.3d at 1217.

### B. Enjoining CAPT's status as Mr. Sweet's exclusive representative will not harm defendants.

Enjoining CAPT from acting as Mr. Sweet's exclusive representative will impose no substantial harm on defendants. CAPT will still collect dues from thousands of other government workers and will maintain thousands of members. CAPT will still be allowed to represent those other workers in its negotiations with DSH. Thus, the balance of equities favors preventing harm to Mr. Sweet instead of CAPT.

Given that the balance of equities here so strongly favors Mr. Sweet, the Court should issue the injunction under the 9th Circuit's alternative test, even if it feels Mr. Sweet has raised only a substantial question as to the merits. *Alliance for the Wild Rockies*, 865 F.3d at 1217.

### IV. Sustaining Mr. Sweet's Constitutional rights is in the public interest.

The enforcement of constitutional rights is, by definition, in the public interest. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)). Moreover, there is no countervailing private interest in having CAPT continue to collect Mr. Sweet's dues or to act as his exclusive representative. CAPT rightfully enjoys substantial rights under the First Amendment to advocate for the issues it cares about. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 364 (2010) (striking down spending limits on union issue advocacy).

### CONCLUSION

For the above stated reasons, the motion for preliminary injunction should be granted.

Dated: February 26, 2019

Respectfully submitted,

/s/ Mark W. Bucher
Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

/s/ Brian K. Kelsey
Brian K. Kelsey (*Pro Hac Vice To Be Filed*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice To Be Filed*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*